**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 24-427** |
| **ROBERT WOODS** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Robert Woods, a five-time convicted felon on court supervision for possession of a firearm by a prohibited person and criminal mischief, possessed a loaded firearm and 8.058 grams of cocaine base ("crack") on the streets of Philadelphia on September 4, 2024. At 43 years old, the defendant has spent much of his adult life either incarcerated or on court supervision. He has shown time and again that he has no regard for the law. For these reasons, as well as for the reasons provided below, the government recommends the sentence detailed in the sealed supplement.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1] In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard. *United States v. Grier*, 475

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 516 F.3d 205, 214-18 (3d Cir. 2008).

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. **BACKGROUND**

On October 29, 2025, the defendant pled guilty to possession with intent to distribute cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

The applicable statutory maximum and mandatory minimum sentences are: Count One, possession with the intent to distribute cocaine base ("crack"), 20 years' imprisonment, a three-year period of supervised release up to a lifetime of supervised release, a $1,000,000 fine, and a $100 special assessment; Count Two, possession of a firearm in furtherance of a drug trafficking crime, life imprisonment, a mandatory five years' imprisonment consecutive to any other sentence of imprisonment imposed, a five-year period of supervised release, a $250,000 fine, and a $100 special assessment; Count Three, possession of a firearm by a felon, 15 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment.

Total Maximum (and Mandatory Minimum) Sentence is: life imprisonment, a mandatory five years' imprisonment consecutive to any other sentence of imprisonment imposed, five years of supervised release up to a lifetime of supervised release, a $1,500,000 fine, and a $300 special assessment.

### B. Sentencing Guidelines Calculation.

The Probation Office correctly calculated the defendant's advisory guideline range as follows: 90 to 97 months, based on a total offense level of 17 and a criminal history category of III (making the guideline imprisonment range 30 to 37 months), and a required 60-month term of imprisonment on Count 2, which shall be imposed consecutively to any other term of

imprisonment, pursuant to 18 U.S.C. § 924(c)(1)(A)(i). Presentence Investigation Report (PSR) ¶ 85.

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). [2]

**A. Consideration of the 3553(a) Factors.**

**1. The Nature and Circumstances of the Offense**

The defendant engaged in a serious offense. As a convicted felon, he was prohibited under state and federal laws from ever possessing a firearm. Nevertheless, he procured one and possessed it in furtherance of a drug trafficking crime. Significantly, the defendant committed these crimes while on court supervision for possession of a firearm by prohibited person and criminal mischief. In January of 2024, the defendant received a sentence of 11.5 to 23 months' imprisonment with immediate parole to house arrest to be followed by six years' probation. PSR ¶ 38. At the time of his September 4, 2024, arrest for the instant case, the defendant was still serving that house arrest sentence. Per the Philadelphia County Probation Department, the defendant was supposed to be at work at the time of his arrest. However, as noted in the PSR, the defendant was terminated from his employment as a home health care aide on September 3, 2024, the day before this arrest, because the "patient no longer wanted services from Robert Woods and changed agencies." PSR ¶ 72. Therefore, the defendant displayed total disrespect to both the Court and the Probation Department violating the terms of his supervision – the court

[2] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (*quoting United States v. Navedo Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

and probation permitted the defendant to leave his home to maintain employment. Instead, the defendant chose to arm himself with a loaded weapon, over eight grams of crack cocaine packaged into thirty-one separate packets, and $1365.00 on the streets of Philadelphia, in an area plagued by shootings and gun violence.

When asked by officers if he was armed with a firearm, the defendant denied possessing a gun while blading his body away from the patrol car. The defendant then pulled his pants up and hoodie down, while looking around as if preparing to run. As the officers began to exit their patrol car, the defendant fled from them, holding the area of his body where officers observed the suspected firearm. The defendant then attempted to throw the gun in a dumpster when he tripped and fell, throwing/releasing the firearm. That firearm was a black CZ P-10 9mm pistol, loaded with eleven live rounds.

The defendant's crimes fall squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of the recommended sentence.

**2. The History and Characteristics of the Defendant**

The defendant's history supports the need for significant incarceration. The defendant has shown no regard for the court when supervised for nearly identical crimes, failing to abide by even the most basic conditions of supervision such as remaining arrest free, and abiding by the court ordered conditions. Despite having been convicted of four prior felonies, all for possession with the intent to deliver a controlled substance, the defendant received a house arrest sentence and probation in 2024 for possession of a firearm by prohibited person and criminal mischief. PSR ¶ 38. In that case, the defendant pointed a firearm in the faces of his mother and another

person while demanding money. *Id.* Per the PSR, "A special condition of the defendant's probation was to attend anger management. A supervision summary indicates that the defendant did not complete this treatment." *Id.*

**3. The Need to Promote Respect for the Law and Provide Just Punishment**

As described above, the defendant's prior five felony convictions have not served to instill even the slightest semblance of respect for the law. Over the course of the past two decades, the defendant has repeatedly violated the law, endangering others by pedaling poison on the streets of Philadelphia. In 2024, his criminal behavior escalated as he began arming himself with a firearm and pointing that weapon at his own mother and another person PSR ¶ 38. Just months after being convicted of that crime and being trusted with the privilege of house arrest, the defendant again violated the terms of his supervision, armed himself yet another a loaded firearm in furtherance of drug trafficking. The defendant's repeated disregard for the courts demonstrates the need for just punishment.

**4. The Need for Adequate Deterrence and Protection of the Public**

General and specific deterrence are important factors for this Court to consider in imposing sentence. The need for adequate deterrence of this type of crime is great – particularly for a defendant who repeatedly violates the law and court supervision. Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated.

**5. Consistency in Sentencing**

In addition, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

**6. Other Considerations**

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). Should the defendant wish to avail himself of the Bureau of Prisons', or U.S. Probation Office's, offerings for education, training, or treatment, the recommended sentence will not inhibit those efforts. Thus, a review of this factor shows that a guideline sentence is appropriate in this case. Also, restitution is not an issue in this case. § 3553(a)(7).

The government anticipates that the defendant will argue that this Court should impose a sentence below the government's recommendation due to experiencing traumatic events throughout his life that may have negatively impacted his behavior and coping skills. PSR ¶¶ 53, 63. Those facts, although unfortunate, do not support a reduced sentence. The defendant must be held responsible for his actions. Accordingly, as explained above, all the appropriate considerations of sentencing, such as the nature of the offense and the character of the offender, call for substantial incarceration in order to protect society from his otherwise persistent criminal conduct.

The government also anticipates that the defendant will assert that his responsibility to care for his family calls for a reduced sentence[3]. While this Court has authority to consider family circumstances as a basis for a reduced sentence, the facts do not warrant such leniency. Unfortunately, inconvenience and even harm to a criminal defendant's family are normal results of a criminal act, and ordinarily do not warrant leniency. The Commission's judgment is sound. Such leniency should not be afforded here, given the severity of the defendant's offenses and the need for the Court to avoid disparate sentences for like offenders.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition of the detailed in the sealed supplement. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

**B. <u>The Continued Importance of the Sentencing Guidelines</u>.**

It is notable that a sentence within or near the guideline range properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 552 U.S. 85, 90 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity

[3] By all accounts, the defendant has fathered multiple children, although the PSR details discrepancies regarding the number of children. The defendant reported to US Probation that he has four children from three different relationships. PSR ¶ 55. The PSR further noted that the Philadelphia County presentence report contains reports from the defendant that he has eight children. PSR ¶ 55, fn 6. The defendant's current paramour reported to US probation that the defendant has six children.

courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" *id.* at 108-09 (citation omitted).

Thus, the Supreme Court stated: "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough*, 552 U.S. at 109 (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

In *Rita*, the Supreme Court held that an appellate court may presume that a within-guideline sentence is reasonable. While this presumption does not apply before the district court, *Rita*, 551 U.S. at 351, the Supreme Court's observation is informative that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." *Id.* at 347 (emphasis in original).

Further, the advisory guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the Guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. The Third Circuit explained:

> Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines." The section of *Booker* that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, *helping to avoid excessive sentencing*

> *disparities while maintaining flexibility sufficient to individualize sentences where necessary." Booker*, 543 U.S. at 264-65 (emphasis added). The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the *Booker* Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines. *Id.* at 263. We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'" *Cooper*, 437 F.3d at 331 (quoting *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005)).

*United States v. Ricks*, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original). Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. *See also United States v. Langford*, 516 F.3d 205, 211-13 (3d Cir. 2008) (explaining at length the continued importance of the guidelines).

For all of these reasons, the advisory guideline range deserves significant respect. To be clear, the government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. However, our point is that a district court must consider the guideline range, *see* § 3553(a)(4), and is usually well advised to follow the Sentencing Commission's advice, in order to assure fair, proportionate, and uniform sentencing of criminal offenders. Moreover, as explained in detail earlier, there are no other 3553(a) factors in this particular case which militate against imposition of a sentence below the government's recommendation.

### C. **Supervised Release**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its

reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least 5 years is warranted. As explained above, the defendant presents a lengthy record of criminal conduct and a failure to abide by court imposed conditions. Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), and to protect the public, § 3553(a)(2)(C). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2. This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3.

## IV. CONCLUSION

The government's final recommendation regarding sentencing appears in the sealed attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Branwen O'Donnell*
BRANWEN O'DONNELL
Special Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Jeremy H. Gonzalez Ibrahim, Esquire
Post Office Box 1025
Chadds Ford, PA 19317
jeremyibrahim.esq@gmail.com

*/s Branwen O'Donnell*
BRANWEN O'DONNELL
Special Assistant United States Attorney

DATED: February 2, 2026